IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Christopher Detty,                    :

          Plaintiff,                  :

     v.                               :          Case No.  2:15-cv-0637

Carolyn W. Colvin, Acting       :          JUDGE GEORGE C. SMITH
Commissioner of Social Security,       Magistrate Judge Kemp

          Defendant.                  :

REPORT AND RECOMMENDATION

I.  Introduction

     Plaintiff, Christopher Detty, filed this action seeking
review of a decision of the Commissioner of Social Security
denying his applications for social security disability benefits
and supplemental security income.  Those applications were filed
on May 18, 2011, and alleged that Plaintiff became disabled on
June 30, 2010.

     After initial administrative denials of his claim,
Plaintiff was given a hearing before an Administrative Law Judge
on March 4, 2011.  After an unfavorable decision and a remand
from the Appeals Council, a second hearing was held on May 8,
2013.  In a decision dated June 10, 2013, the ALJ denied
benefits.  That became the Commissioner's final decision on
September 13, 2014, when the Appeals Council denied review.

     After Plaintiff filed this case, the Commissioner filed the
administrative record on April 24, 2015.  Plaintiff filed his
statement of specific errors on July 30, 2015, to which the
Commissioner responded on November 4, 2015.  No reply brief has
been filed, and the case is now ready to decide.

     II.  The Lay Testimony at the Administrative Hearing

     Plaintiff was 31 years old when he filed his application for
benefits, and 29 on the date he alleged he became disabled.  He

attended school through the twelfth grade but did not graduate.
At the administrative hearings, he testified as follows.  His
testimony appears at pages 87-119 (first hearing) and 47-73
(second hearing) of the administrative record.

At the first administrative hearing, which was held in 2011,
Plaintiff first testified that he did not do stairs well and that
he could sit for 20 or 30 minutes before needing to get up and
stretch.  His last significant job was as a tree climber for a
tree company.  He also worked for a company which laid fiber-
optic cable and for a concrete company.  Plaintiff had also done
factory work and worked as an electrician and a roofer.

Plaintiff's most debilitating problem was his back.  He had
difficulty bending, standing, and sitting.  The pain was located
in his lower back but radiated both upward and downward, reaching
his right knee at times.  Medication, stretching, and rest seemed
to help.  He did not do much lifting around the house.  The only
other health problems he mentioned were lazy eye and depression.
In a typical day, he would watch television or socialize.  He had
been told that he needed surgery but he had no money to pay for
it.  The same was true for steroid injections.  He also napped
daily, possibly due to side effects from medication.

At the second administrative hearing, Plaintiff said that he
had tried to work about a year before and could not due to his
inability to stand for very long.  He again testified to pain in
his back radiating down into his right leg.  He was most
comfortable when reclining with his legs elevated.  He was not
doing any household chores.  Plaintiff watched television and
could follow the programs he watched.

In response to questioning from the ALJ, Plaintiff said that
on a typical day he could walk a city block, could stand for
fifteen or twenty minutes, and could sit for half an hour to 45
minutes.  He could push, pull, and reach but had trouble bending.

-2-

He could lift a gallon of milk and climb a flight of stairs.  He could take care of his personal needs and went shopping occasionally.  His only source of financial support, apart from relatives, was food stamps.

### III.  The Medical Records

A number of medical records exist in the file.  They are found beginning at Tr. 456.  Because this case involves only a vocational issue and not any issues relating to the content or interpretation of the medical evidence, those records are not summarized here.

### IV.  The Vocational Testimony

Vocational testimony was taken at both administrative hearings.  Because only the testimony given at the second hearing is at issue here, the Court will not summarize the testimony of Dr. Olsheski which was provided at the first administrative hearing.

At the second hearing, Carl Hartung was called to give vocational testimony.  Beginning at Tr. 73, he testified as follows.  The Court summarizes only the essential portions of his testimony.

First, Mr. Hartung identified Plaintiff's past relevant work as press operator, tree trimmer, construction worker, electrician's helper, roofer, and machine packager.  Plaintiff performed all of those jobs at the medium exertional level or above, although the press operator is classified as light work by the Dictionary of Occupational Titles.  None were skilled positions, although some were semi-skilled.

Mr. Hartung was asked to answer questions about a hypothetical person of Plaintiff's age who had the same educational and vocational background.  That person could occasionally lift and carry up to 20 pounds, frequently lift and carry up to ten pounds, could sit, stand, and walk for up to six

-3-

hours in a workday with normal breaks, could push and pull within
the lifting restrictions described, could occasionally climb
ramps and stairs, could never climb ladders, ropes, or scaffolds,
and could occasionally stoop, kneel, crouch, and crawl.  Mr.
Hartung responded that someone with those limitations could work
as a press operator.

A second hypothetical was then posed, which asked about
someone who could occasionally lift and carry up to 100 pounds,
frequently lift and carry up to 50 pounds, continuously lift and
carry up to 20 pounds, could sit for four hours at a time, stand
up to an hour at a time and for up to three hours in a workday,
walk for up to 30 minutes at a time and for up to one hour in a
workday, could use foot controls from one-third to two-thirds of
a workday, could occasionally climb ramps and stairs, could never
climb ladders, ropes, or scaffolds, could occasionally stoop,
kneel, and could never crouch or crawl.  The person could also
not work at unprotected heights, in extremes of temperature, or
around vibrations, but could occasionally work around moving
mechanical parts, occasionally operate an automobile,
occasionally work in conditions of humidity and wetness,
occasionally work around environmental irritants, and could work
in conditions of moderate noise.  Mr. Hartung testified that such
a person could not do any of Plaintiff's past jobs, but could
work as a parking lot attendant.  No information was available on
the number of such jobs in the southern Ohio region, meaning that
fewer than 100 existed, but in the State of Ohio there were 3,634
positiond, and nationally there were 138,202.

V.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 22-
34 of the administrative record.  The important findings in that
decision are as follows.

The Administrative Law Judge found, first, that Plaintiff

-4-

met the insured status requirements of the Social Security Act through June 30, 2011.  Next, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 1, 2006.  Going to the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including degenerative disease of the cervical and lumbar spines and traumatic arthritis of the right knee with related surgery.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity which was described in the second hypothetical question posed to Mr. Hartung.  With that functional capacity, Plaintiff was unable to perform his past relevant work.  However, the ALJ found that he could do the job of parking lot attendant.  The ALJ further found that such jobs existed in significant numbers in the State and national economies, concluding that under the parameters set out in Hall v. Bowen, 837 F.2d 272 (6th Cir. 1988), those numbers were significant.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises a single issue, which he states as follows: "The ALJ failed to rely on substantial evidence because he mischaracterized the vocational expert's testimony."  Statement of Specific Errors, Doc. 15, at 3.  The Court reviews this issue under the following standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial

evidence, shall be conclusive. . . ."  Substantial evidence is
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion'"  Richardson v. Perales, 402
U.S. 389, 401 (1971) (quoting Consolidated Edison Company v.
NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere
scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th
Cir. 1976).  The Commissioner's findings of fact must be based
upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435
(6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th
Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir.
1984).  In determining whether the Commissioner's decision is
supported by substantial evidence, the Court must "'take into
account whatever in the record fairly detracts from its weight.'"
Beavers v. Secretary of Health, Education and Welfare, 577 F.2d
383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB,
340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human
Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court
would reach contrary conclusions of fact, the Commissioner's
decision must be affirmed so long as that determination is
supported by substantial evidence. Kinsella v. Schweiker, 708
F.2d 1058, 1059 (6th Cir. 1983).

     The only finding at issue in this case is the ALJ's decision
that a significant number of jobs existed in both the State and
national economies which could be done by someone with
Plaintiff's limitations.  The leading case in this Circuit on
that issue is the one cited by the ALJ, Hall v. Bowen, 837 F.2d
272 (6th Cir. 1987).  There, the Court of Appeals first noted
that disability means, under the definition found in 42 U.S.C.
§423(d)(2)(A), the inability to engage in either a claimant's
past relevant work or "engage in any other kind of substantial
gainful work which exists in the national economy," which, in
turn, means "work which exists in significant numbers either in

the region where such individual lives or in several regions of
the country." It then considered whether the 1,350 jobs
identified by the vocational expert in that case, which existed
in the local economy, constituted a significant number. The
court, after citing to a pertinent regulation as well (20 C.F.R.
§404.1566(b), which contrasts jobs existing in significant
numbers with "[i]solated jobs that exist only in very limited
numbers in relatively few locations outside of the region"), held
that it could not "set forth one special number which is to be
the boundary between a 'significant number' and an insignificant
number of jobs." Id. at 275. Rather, it instructed judges to

> consider many criteria in determining whether work
> exists in significant numbers, some of which might
> include: the level of claimant's disability; the
> reliability of the vocational expert's testimony; the
> reliability of the claimant's testimony; the distance
> claimant is capable of travelling to engage in the
> assigned work; the isolated nature of the jobs; the
> types and availability of such work, and so on.

Id. An ALJ's decision on this issue, if supported by substantial
evidence, is conclusive. Id.

Plaintiff argues that the ALJ mis-cited Mr. Hartung's
testimony in the administrative decision. The ALJ said this:
"Mr. Hartung testified that given all of these factors [described
in the second hypothetical question] the individual would be able
to perform the requirements of representative occupations such as
parking lot attendant." (Tr. 33). However, Plaintiff points out
that Mr. Hartung did not describe that job as a representative
occupation, but rather as the only occupation available for
someone with that particular set of physical limitations. This
mistake, Plaintiff claims, meant that the ALJ did not properly
determine if there are a significant number of jobs available to
him and that the error in construing Mr. Hartung's testimony

"undermined his *Hall v. Bowen* analysis" to the extent that it no longer was supported by substantial evidence.  Statement of Errors, at 4.  He does not argue specifically that the number of such jobs in the State economy or in the national economy is not "significant."  The Commissioner argues, in response, that any error in characterizing Mr. Hartung's testimony was harmless because, even if parking lot attendant were the only job available to Plaintiff, that job existed in significant numbers. The Commissioner's memorandum cites a number of court decisions holding that comparable numbers of jobs constituted significant numbers for purposes of the Social Security Act.  See Doc. 20, at 5.

The Court agrees that even if the ALJ believed, as he stated, that the parking lot attendant job was representative of other available jobs, any such error was harmless if the numbers associated with that position are significant.  See, e.g., Nejat v. Comm'r of Social Security, 369 Fed.Appx. 574 579 (6th Cir. Dec. 22, 2009)(holding that even if ALJ erred in determining that the claimant could perform two of the three jobs identified by the vocational expert, the number of jobs in the third category was enough to support the ALJ's finding); see also Jones v. Comm'r of Social Security, 2016 WL 47968 (E.D. Mich. Jan. 5, 2016); Miller v. Astrue, 2012 WL 6607006 (N.D. Ohio Nov. 26, 2012), adopted and affirmed 2012 WL 6599800 (N.D. Ohio Dec. 18, 2012).  Thus, whether the number of parking lot attendant jobs is significant becomes the dispositive question.

It is tempting to do, as the Commissioner has done, a survey of decisions to see where courts typically draw the line between significant and insignificant numbers of jobs.  There are certainly cases which, applying Hall, have rejected an ALJ's finding on that issue.  See, e.g., Cain v. Comm'r of Social Security, 2015 WL 4393987 (W.D. Mich. July 16, 2015)(450 jobs in

the State of Michigan and 12,400 nationally); <u>Smathers v. Comm'r
of Social Security</u>, 2015 WL 401017 (S.D. Ohio, Jan. 28, 2015),
<u>adopted and affirmed</u> 2015 WL 5568324 (S.D.Ohio Sept. 22,
2015)(300 jobs regionally and 8,250 nationally); <u>Waters v. Sec'y
of H.H.S.</u>, 827 F.Supp. 446 (W.D. Mich. 1992)(1,000 jobs in the
State of Michigan).  It is just as easy to find others which
sustain it.  <u>See, e.g., Tiley v. Colvin</u>, 2015 WL 4910458 (S.D.
Ohio July 27, 2015), <u>adopted and affirmed</u> 2015 WL 4885540 (S.D.
Ohio Aug. 17, 2015)(numbers of a single job, surveillance system
monitor, were sufficient when there were 3,500 such jobs
regionally and 79,000 nationally).  The necessary inquiry is
somewhat more nuanced, however.

     <u>Hall</u> sets forth a list of factors which are relevant to the
"significant numbers" inquiry in addition to the numbers
themselves.  One of the more important ones is the isolated
nature of the job or jobs in question, particularly because that
specific factor is contained in the applicable regulation, 20
C.F.R. §404.1566(b).  That factor was the key to the <u>Waters</u>
decision; there, although there were 1,000 jobs available to the
claimant in the State of Michigan, none were in the Upper
Peninsula where he lived, and all required considerable travel,
an area in which the claimant was significantly limited.  That
claimant was also 53 years old and limited to sedentary work.
Other cases which have analyzed more than the raw numbers have
focused on similar issues.  <u>See, e.g., Frommel v. Comm'r of
Social Security</u>, 2015 WL 3970147 (S.D. Ohio June 10, 2015),
<u>adopted and affirmed</u> 2015 WL 3970154 (S.D. Ohio June 30, 2015),
where the Court remanded the case to the Commissioner to conduct
an additional inquiry about whether 730 jobs in the local economy
constituted a significant number for a 53-year-old claimant who
could do only a limited range of light work and there was reason
to doubt the accuracy of the numbers supplied by the vocational
expert.

It is important to point out that Plaintiff has not made a specific argument about the number of jobs identified, nor has he suggested that remand is required for any reason other than the ALJ's misstatement about the parking lot attendant job's being "representative" of other positions that Plaintiff could perform. Looking at the various Hall v. Bowen factors, however, the Court notes that Plaintiff is a younger individual; the work involved is not sedentary; the number of jobs available both statewide and nationally is greater than the number in cases where some question existed about whether there was a significant number of jobs available; and Plaintiff was found to be able to sit for up to four hours at a time, which would accommodate significant travel.  Although the fact that fewer than 100 such jobs existed in the region of the State where Plaintiff lives (at the time of the second administrative hearing, he resided in Londonderry, Ohio, which is approximately 12 miles southeast of Chillicothe and about 60 miles from Columbus), weighs against the ALJ's finding, Columbus, a major metropolitan area, is within one hour's drive, and Cincinnati is two hours away.  Given all of these factors, the Court concludes that a reasonable person could have reached the same conclusion as the ALJ about whether the parking lot attendant jobs existed in significant numbers in the State economy.  That being so, substantial evidence supports the ALJ's decision, and a remand is not required.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner of Social Security.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection
is made, together with supporting authority for the objection(s).
A judge of this Court shall make a <u>de novo</u> determination of those
portions  of the report or specified proposed findings or
recommendations to which objection is made.  Upon proper
objections, a judge of this Court may accept, reject, or modify,
in whole or in part, the findings or recommendations made herein,
may receive further evidence or may recommit this matter to the
magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to
object to the Report and Recommendation will result in a
waiver of the right to have the district judge review the
Report and Recommendation <u>de novo</u>, and also operates as a
waiver of the right to appeal the decision of the District
Court adopting the Report and Recommendation.  <u>See Thomas v.
Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d
947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge